UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

COURTHOUSE NEWS SERVICE,

       Plaintiff,

v.                                              Case No. __2:18cv391__

GEORGE E. SCHAEFER, in his official
capacity as Clerk of the Circuit Court for
Norfolk, Virginia,

    SERVE:      George E. Schaefer, Clerk
                      Norfolk Circuit Court
                      150 St. Paul's Boulevard, 7th Floor
                      Norfolk, Virginia 23510

JACQUELINE C. SMITH, in her official
capacity as Clerk of the Circuit Court for
Prince William County, Virginia,

    SERVE:      Jacqueline C. Smith, Clerk
                      Prince William County Circuit Court
                      9311 Lee Avenue
                      Manassas, Virginia 20110

       Defendants.

**COMPLAINT**
**ALLEGING VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**
**AND SEEKING PRELIMINARY AND PERMANENT INJUNCTIVE**
**<u>AND DECLARATORY RELIEF</u>**

      Plaintiff Courthouse News Service ("CNS"), by and through its undersigned attorneys, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against Defendants George E. Schaefer, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia (the "Norfolk Clerk") and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia ("Prince William Clerk") (collectively referred to herein as "Defendants").

I-1552841.2

## INTRODUCTION

1.     The First Amendment provides the press and public with a presumptive right of access to civil complaints filed with the court.  Grounded in the right of free expression, where the First Amendment right of access applies, it must be contemporaneous.  Contemporaneous access to new civil complaints is fundamental to the press and the public; it is essential to accurate and fair news reporting of civil disputes, and thus vital to the public's ability to discuss what is happening in an important branch of government.  Delayed access inhibits that discussion.  *Doe v. Public Citizen*, 749 F.3d 246, 265, 272 (4th Cir. 2014) ("It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings" and "the public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies.").

2.     Courts across the country have recognized that the presumptive right of access attaches to judicial documents, including civil complaints, upon receipt of those documents by a court.  When a complaint is withheld, the public is left unaware that a case has been filed, that the powers of the judicial branch of government have been invoked, and that public resources have been spent to resolve a dispute.

3.     In the Circuit Court for Norfolk, Virginia ("Norfolk Circuit Court") and the Circuit Court for Prince William County, Virginia ("Prince William Circuit Court"), newly-filed civil complaints are not made available to the press and the public in a contemporaneous manner. From January 1, 2018 through June 30, 2018, in the Norfolk Circuit Court, only 16% of newly-filed complaints were made available to the press and the public on the day of filing; 13% were delayed until the next day; 21% were delayed for two days; and 50% were delayed for three days or more.  In the Prince William Circuit Court, only 27% of newly-filed complaints were made

available to the press and public on the day of filing; 21% were delayed until the next day; 12% were delayed for two days; and 40% were delayed for three days or more. These delays are the functional equivalent of access denials and violate the First Amendment.

4. CNS brings this action to address constitutional wrongs, to challenge the legality of Defendants' actions, and to seek injunctive and declaratory relief.

## JURISDICTION AND VENUE

5. CNS' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Norfolk Clerk's primary place of business is within the Norfolk Division of this District and because a substantial part of the events or omissions giving rise to CNS' claims occurred in this District.

## PARTIES

7. CNS is a California corporation with its principal place of business located in Pasadena, California. A widely-read legal news service with thousands of subscribers across the nation, CNS specializes in news reporting about civil litigation, from the date of filing through the appellate level, in state and federal courts throughout the United States. CNS' comprehensive and timely coverage of civil litigation through its print, website, and e-mail publications has made it a go-to source of information about the nation's civil courts.

8. Defendant George E. Schaefer is the Clerk of the Circuit Court for Norfolk, Virginia, and is sued in his official capacity only. The Norfolk Clerk is responsible for, among

other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination.

9. Defendant Jacqueline C. Smith is the Clerk of the Circuit Court for Prince William County, Virginia, and is sued in her official capacity only. The Prince William Clerk is responsible for, among other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination.

10. Acting in their official capacities, Defendants, as well as those acting at their direction and under their supervision, are directly involved with and/or responsible for acts giving rise to the delays in access to newly-filed civil complaints experienced by CNS. These acts reflect the official practices and policies of Defendants. Defendants' actions are taken under the color of Virginia law and constitute state action within the meaning of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

11. CNS seeks relief against Defendants, as well as against their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTUAL ALLEGATIONS

A. **CNS' Publications And Subscribers**

12. CNS is a nationwide news service founded almost 30 years ago out of a belief that news about civil litigation went unreported because the traditional news media failed to cover much of the important business of the courts. CNS employs approximately 260 people full time, most of them editors and reporters, covering approximately 3,100 state and federal trial and appellate courts in all 50 states in the United States. CNS currently employs four reporters who cover the state and federal trial and appellate courts of Virginia, and who are supervised by CNS'

Southeast Regional Bureau Chief. CNS' four Virginia reporters are based in the larger metropolitan areas – Alexandria, Prince William County, Norfolk, and Richmond.

13. CNS offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil complaints. These reports are sent to subscribers via e-mail each evening. CNS publishes two New Litigation Reports in Virginia – the *Virginia Report* and the *Southern Virginia State Report*. The *Virginia Report* covers, among other courts, the Prince William Circuit Court. The *Southern Virginia State Report* covers, among other courts, the Norfolk Circuit Court. These New Litigation Reports do not cover criminal, domestic relations, or probate matters.

14. Among CNS' other publications are its two monthly newsletters, the *Securities Law Digest* and *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from a growing number of federal district courts, including the two in Virginia.

15. In addition, CNS publishes a freely-available website, www.courthousenews.com, featuring news reports and commentary, which is read by hundreds of thousands of people each month. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

16. CNS has been credited as the original source of reporting on various topics by a wide range of publications, including the *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The*

5

I-1552841.2

*Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, the YouTube news channel, and others.  In addition, U.S., Canadian, and New Zealand radio shows have interviewed CNS reporters.

17.   CNS has more than 2,200 subscribers nationwide.  A substantial set of news and entertainment outlets are CNS subscribers, including but not limited to *The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, *The Dallas Morning News*, *Detroit Free Press*, Fox Entertainment Group, *Houston Chronicle*, *Los Angeles Times*, North Jersey Media Group, *The Salt Lake Tribune*, *San Antonio Express News*, *San Jose Mercury News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Warner Bros., and many broadcast stations.  The Washington, DC-based Center for Public Integrity is also a CNS subscriber.

18.   Among academic institutions, subscribers to CNS' New Litigation Reports include Boston College Law School, Boston University, Case Western Reserve University, Harvard Law School, Loyola Law School, MIT Sloan School of Management, Southern Illinois University School of Law, UC Hastings College of Law, and UCLA School of Law.

19.   A majority of the nation's large and mid-sized law firms also subscribe to one or more of CNS' publications.  Non-law firm business entities, including large publicly-traded companies, government entities, and non-profit organizations, also subscribe to CNS' publications.

20. To prepare the New Litigation Reports and identify new cases that may warrant a website article, CNS reporters have traditionally visited their assigned courts on a daily or weekly basis to review all the complaints filed that day (or since their last visit) to determine which ones are newsworthy. However, as the vast majority of federal courts and an increasing number of state courts are putting court records online via court web sites, CNS also covers courts remotely through the Internet. Given the nature of the New Litigation Reports and CNS' other news publications, any delay in the ability of a reporter to review newly-filed civil complaints necessarily creates a delay in CNS' ability to inform subscribers and the public of the factual and legal allegations in those complaints.

**B.      A Tradition Of Access To Civil Complaints On Receipt For Filing**

21. A new complaint serves as the opening bell in a legal contest. In recognition of the media's traditional role as a surrogate to the general public for information as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters – especially those who visit the courts daily – with access to new civil complaints upon receipt for filing and before administrative processing. This ensures that interested members of the public learn about new cases in a contemporaneous manner, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

22. Historically, reporters covering the courts could review and report on newly-filed civil complaints on the day of filing by looking through the new complaints at the courthouse. This access generally occurred upon the court's receipt of a new complaint, and before the clerk's office performed the additional administrative tasks that follow the receipt of a new complaint – a process that was traditionally called "docketing" but in recent years, especially as

7

courts have moved to electronic case management systems and electronic filing ("e-filing"), has been referred to as "processing."

23. In paper-filing courts, a filer approaches the clerk's counter and hands the new complaint to a clerk who completes the intake tasks associated with filing, which typically includes: stamping the complaint as "filed," affixing a date, assigning a case number, and taking a check or credit card for the filing fee. Once those tasks are completed, the new complaint is considered "filed" and the clerk sets it aside, turning to the next filer in line. Later, a clerk gathers up the new complaints to complete the "docketing" or "processing" tasks. This second set of tasks is commonly more time-consuming and includes entering information, such as parties, lawyers, addresses, the nature of case, and the case number, into the court's case management system. In courts that now have public access terminals, where the public can view filings online at the courthouse, the second set of tasks also includes scanning. Journalists traditionally reviewed the new complaints after they were set aside by the intake clerk and before they were picked up by the docketing or processing clerk. In courts which allow e-filing, a party can file a new complaint electronically and a software program typically performs the intake functions (affixing a filing date and assigning a case number). A clerk at the courthouse then performs processing tasks, which, in the e-filing environment, include checking the docket information entered by the filer.

24. Until recent years, the Norfolk and Prince William Circuit Courts also had a tradition of making complaints available to the press and public in a contemporaneous manner, upon receipt and before the completion of administrative processing. This allowed journalists who visited the court every day an opportunity to review and report on the complaints on the day

they were filed, and ensured that interested members of the public could learn about new cases in a timely and contemporaneous manner – while those cases were still newsworthy.

25. There is a good reason for this practice. The complaint is the foundational cornerstone of all civil litigation. It is the document by which the authority of a branch of government is invoked to publicly resolve what had previously been a private dispute. It sets forth the factual and legal claims. When a complaint is received by a clerk for filing, the public – which funds the operation of the courts – is entitled to know who has invoked the jurisdiction and authority of the judicial branch and to what end. When a new complaint is withheld, the public has no way of knowing that a new civil proceeding has been initiated. Even if they find out about it, through docket information or directly from the parties to the case, without access to the complaint itself, they have no reliable and accurate way to ascertain the factual and legal claims in the new civil action.

26. The vacuum of information after a new complaint is filed, but while it is being withheld from public view, gives a plaintiff the power to control news about the new litigation by feeding the news to only those publications the plaintiff chooses. Moreover, delays in access, even of one or two days, make it less likely the complaints will be reported on by the press. Any reports that are written are likely to be less prominent and, thus, less likely to come to the public's attention.

C. **Delays In Access At The Prince William and Norfolk Circuit Courts**

27. In the Prince William and Norfolk Circuit Courts, inordinate delays in press and public access, often exceeding many days and even weeks after a complaint has been filed, constitute denials of access that violate the First Amendment right of access to civil complaints.

### Prince William Circuit Court

28. CNS has covered the Prince William Circuit Court for the past 14 years – initially on a weekly basis, and then on a daily basis starting in September 2017. Until approximately 2013, the press and the public were able to review copies of the vast majority of newly-filed civil complaints on the day of filing. From at least 2004 and until approximately 2013, the Prince William Circuit Court Clerk's office had a wire basket located at or nearby the intake counter. The intake clerks would place newly-filed civil complaints, which had been marked with a filed stamp and a date stamp and had a payment receipt attached, but which had not yet been administratively processed, in the basket. The press was then able to review those new complaints. As a result of this procedure, CNS and other members of the press saw the vast majority of newly-filed civil complaints on the day they were filed.

29. In 2013, the Prince William Circuit Court implemented a voluntary pilot e-filing program, which has affected only a small number of new complaints. Around this same time, the Prince William Circuit Court Clerk's office stopped placing new filings into the wire basket, even though the basket was still located near the intake counter. However, CNS reporters were still able to review new complaints on the day of filing and before processing by requesting them from the intake clerks.

30. In January 2018, the Prince William Circuit Court Clerk's office began withholding access to all newly-filed civil complaints from CNS until after administrative processing. Under current procedures, after a civil complaint is received, an intake clerk date stamps it, assigns a case number, processes the payments, and places the complaint in a work tray or in a stack on his or her desk. However, the Clerk's office does not permit the press to see complaints in that stack. At a later time, a clerk conducts the administrative processing of the

complaint, which includes entering information into the case management system, arranging for service of process, and scanning the complaint into the electronic case imaging system. Only after these steps have been completed is the complaint posted for electronic viewing at public access terminals in the Clerk's office, during court hours.

31. The Prince William Circuit Court Clerk's office recently posted a sign that states: "We are dedicated to scanning all civil filings into our digital system within ten (10) days of receipt in this office." The sign further states, in smaller text: "If you have a court date in less than ten (10) days, please notify the intake clerk so we can assure your documents are delivered in a timely manner. Thank you!"

32. On days when the court is open, the Prince William Circuit Court Clerk's office opens to the press and the public at 8:30 a.m. and closes at 5:00 p.m. The clerk only accepts new filings and copy requests until 4:30 p.m. The CNS reporter must leave the clerk's office when it closes at 5:00 p.m., at which time the reporter can no longer see new filings.

33. From January 1, 2018 through June 30, 2018, CNS tracked the rate and length of delays in press access to newly-filed complaints in the Prince William Circuit Court. As shown in the data below, only 27% of newly-filed complaints were made available to the press and public on the day of filing; 21% were delayed until the next day; 12% were delayed for two days; and 40% were delayed for three days or more:

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/03/18 | 2 | 2 | 0 | 0 | 0 | 2/01/18 | 5 | 1 | 1 | 0 | 3 |
| 1/04/18 | 3 | 2 | 0 | 0 | 1 | 2/02/18 | 2 | 1 | 0 | 0 | 1 |
| 1/05/18 | 6 | 3 | 0 | 0 | 3 | 2/05/18 | 3 | 0 | 0 | 2 | 1 |
| 1/08/18 | 9 | 0 | 0 | 0 | 9 | 2/07/18 | 3 | 0 | 0 | 2 | 1 |
| 1/09/18 | 12 | 6 | 0 | 4 | 2 | 2/08/18 | 3 | 0 | 2 | 0 | 1 |
| 1/10/18 | 3 | 3 | 0 | 0 | 0 | 2/09/18 | 3 | 0 | 0 | 0 | 3 |
| 1/11/18 | 2 | 0 | 0 | 0 | 2 | 2/12/18 | 2 | 0 | 1 | 0 | 1 |
| 1/16/18 | 15 | 0 | 7 | 1 | 7 | 2/13/18 | 1 | 0 | 0 | 0 | 1 |

11

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/18 | 4 | 1 | 0 | 0 | 3 | 2/15/18 | 6 | 2 | 2 | 0 | 2 |
| 1/18/18 | 5 | 0 | 4 | 0 | 1 | 2/16/18 | 10 | 3 | 0 | 0 | 7 |
| 1/19/18 | 21 | 5 | 0 | 0 | 16 | 2/20/18 | 6 | 1 | 1 | 1 | 3 |
| 1/22/18 | 7 | 0 | 2 | 2 | 3 | 2/21/18 | 8 | 3 | 3 | 1 | 1 |
| 1/23/18 | 8 | 2 | 2 | 1 | 3 | 2/22/18 | 8 | 1 | 2 | 0 | 5 |
| 1/24/18 | 6 | 2 | 2 | 0 | 2 | 2/23/18 | 3 | 2 | 0 | 0 | 1 |
| 1/25/18 | 4 | 3 | 1 | 0 | 0 | 2/26/18 | 6 | 0 | 4 | 2 | 0 |
| 1/26/18 | 7 | 3 | 0 | 0 | 4 | 2/27/18 | 7 | 3 | 4 | 0 | 0 |
| 1/29/18 | 6 | 0 | 3 | 1 | 2 | 2/28/18 | 1 | 0 | 1 | 0 | 0 |
| 1/30/18 | 4 | 0 | 0 | 2 | 2 | | | | | | |
| 1/31/18 | 5 | 1 | 1 | 0 | 3 | | | | | | |

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/01/18 | 3 | 2 | 1 | 0 | 0 | 4/02/18 | 5 | 0 | 0 | 2 | 3 |
| 3/02/18 | 3 | 1 | 0 | 0 | 2 | 4/04/18 | 7 | 2 | 5 | 0 | 0 |
| 3/05/18 | 1 | 0 | 0 | 0 | 1 | 4/05/18 | 2 | 1 | 1 | 0 | 0 |
| 3/06/18 | 2 | 0 | 0 | 2 | 0 | 4/06/18 | 6 | 1 | 0 | 0 | 5 |
| 3/07/18 | 12 | 4 | 3 | 1 | 4 | 4/09/18 | 6 | 1 | 3 | 2 | 0 |
| 3/08/18 | 11 | 0 | 2 | 0 | 9 | 4/10/18 | 3 | 3 | 0 | 0 | 0 |
| 3/09/18 | 8 | 2 | 0 | 0 | 6 | 4/11/18 | 5 | 2 | 2 | 0 | 1 |
| 3/12/18 | 12 | 1 | 1 | 10 | 0 | 4/12/18 | 5 | 2 | 0 | 0 | 3 |
| 3/13/18 | 2 | 0 | 0 | 1 | 1 | 4/13/18 | 4 | 0 | 0 | 0 | 4 |
| 3/14/18 | 4 | 0 | 4 | 0 | 0 | 4/16/18 | 9 | 1 | 0 | 6 | 2 |
| 3/15/18 | 5 | 1 | 3 | 0 | 1 | 4/17/18 | 3 | 1 | 0 | 0 | 2 |
| 3/16/18 | 8 | 0 | 0 | 0 | 8 | 4/18/18 | 3 | 2 | 1 | 0 | 0 |
| 3/19/18 | 3 | 3 | 0 | 0 | 0 | 4/19/18 | 9 | 4 | 3 | 0 | 2 |
| 3/20/18 | 6 | 6 | 0 | 0 | 0 | 4/20/18 | 6 | 1 | 0 | 0 | 5 |
| 3/22/18 | 9 | 2 | 0 | 0 | 7 | 4/23/18 | 7 | 2 | 5 | 0 | 0 |
| 3/23/18 | 13 | 1 | 0 | 0 | 12 | 4/24/18 | 1 | 1 | 0 | 0 | 0 |
| 3/26/18 | 4 | 0 | 0 | 0 | 4 | 4/25/18 | 11 | 6 | 4 | 1 | 0 |
| 3/27/18 | 6 | 3 | 1 | 1 | 1 | 4/26/18 | 11 | 7 | 4 | 0 | 0 |
| 3/28/18 | 5 | 2 | 0 | 0 | 3 | 4/27/18 | 5 | 2 | 0 | 0 | 3 |
| 3/29/18 | 6 | 3 | 0 | 0 | 3 | 4/30/18 | 8 | 1 | 1 | 5 | 1 |
| 3/30/18 | 5 | 4 | 0 | 0 | 1 | | | | | | |

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/01/18 | 1 | 0 | 0 | 1 | 0 | 6/01/18 | 8 | 3 | 1 | 3 | 1 |
| 5/02/18 | 9 | 1 | 6 | 2 | 0 | 6/04/18 | 4 | 0 | 0 | 0 | 4 |
| 5/03/18 | 7 | 5 | 0 | 0 | 2 | 6/07/18 | 6 | 3 | 0 | 0 | 3 |
| 5/04/18 | 7 | 2 | 0 | 0 | 5 | 6/08/18 | 3 | 0 | 0 | 1 | 2 |
| 5/07/18 | 12 | 0 | 3 | 4 | 5 | 6/11/18 | 9 | 1 | 2 | 0 | 6 |

12

| Date | | | | | | Date | | | | | |
|------|---|---|---|---|---|------|---|---|---|---|---|
| 5/08/18 | 5 | 0 | 5 | 0 | 0 | 6/12/18 | 6 | 2 | 1 | 0 | 3 |
| 5/09/18 | 5 | 4 | 0 | 0 | 1 | 6/13/18 | 5 | 2 | 1 | 2 | 0 |
| 5/10/18 | 3 | 0 | 1 | 0 | 2 | 6/14/18 | 8 | 0 | 6 | 1 | 1 |
| 5/11/18 | 4 | 1 | 0 | 0 | 3 | 6/15/18 | 5 | 3 | 0 | 0 | 2 |
| 5/14/18 | 7 | 2 | 2 | 1 | 2 | 6/18/18 | 3 | 1 | 0 | 0 | 2 |
| 5/15/18 | 1 | 0 | 0 | 1 | 0 | 6/19/18 | 5 | 4 | 0 | 1 | 0 |
| 5/16/18 | 4 | 4 | 0 | 0 | 0 | 6/20/18 | 8 | 0 | 4 | 1 | 3 |
| 5/17/18 | 8 | 3 | 1 | 0 | 4 | 6/21/18 | 3 | 1 | 0 | 2 | 0 |
| 5/18/18 | 3 | 0 | 0 | 0 | 3 | 6/22/18 | 4 | 1 | 1 | 0 | 2 |
| 5/21/18 | 12 | 3 | 7 | 1 | 1 | 6/25/18 | 3 | 0 | 1 | 0 | 2 |
| 5/22/18 | 11 | 2 | 2 | 6 | 1 | 6/26/18 | 5 | 2 | 1 | 1 | 1 |
| 5/23/18 | 4 | 1 | 1 | 1 | 1 | 6/27/18 | 4 | 1 | 1 | 0 | 2 |
| 5/24/18 | 2 | 0 | 0 | 0 | 2 | 6/28/18 | 5 | 1 | 3 | 0 | 1 |
| 5/25/18 | 6 | 2 | 0 | 0 | 4 | 6/29/18 | 9 | 3 | 0 | 0 | 6 |
| 5/29/18 | 5 | 0 | 2 | 0 | 3 | | | | | | |
| 5/30/18 | 3 | 2 | 0 | 1 | 0 | | | | | | |
| 5/31/18 | 7 | 2 | 4 | 0 | 1 | | | | | | |

| Overall | # Reviewed | % |
|---------|------------|---|
| Same day | 187 | ~27 |
| 1 day delay | 143 | ~21 |
| 2 days delay | 80 | ~12 |
| 3+ days delay | 269 | ~40 |
| **Total** | **679** | **100** |

34. These delays are continuing, and are preventing CNS – and by extension its readers, including subscribers and non-subscribers – from obtaining contemporaneous information about important new civil actions filed at the Prince William Circuit Court.

**Norfolk Circuit Court**

35. CNS began covering the Norfolk Circuit Court in 2005, on a weekly or semi-weekly basis. Upon information and belief, before that time, the press was able to review newly-filed civil complaints on the day of filing and was even permitted to go behind the counter and to the desks of individual clerks in order to examine new civil complaints.

36. Beginning in or around 2006, the Norfolk Circuit Court instituted a series of changes that resulted in delays in access to newly-filed complaints: in 2006, the court began scanning new filings, including newly-filed civil complaints; in 2013, the court implemented a pilot e-filing program, which allows (but does not require) attorneys to electronically file civil actions; and in 2015, the courthouse moved locations. Along with these changes, the clerk's office began delaying access until after administrative processing – even though the clerk's office maintains the ability to provide access before processing.

37. Reporters are no longer allowed to review newly-filed civil complaints right after they are received, even though the vast majority are still paper-filed. Instead, they must wait to see new complaints – both paper-filed and e-filed – until after they are administratively processed, the paper complaints are scanned, and a clerk manually posts the complaints so that they can be viewed on the public access terminals at the court. These public access terminals can only be accessed during court hours.

38. CNS began covering the Norfolk Circuit Court on a daily basis in 2017. In August 2017, the Norfolk Circuit Court Clerk's office confirmed to CNS that it will not allow the press to see or obtain copies of newly-filed civil complaints until after the clerk's office has completed its administrative processing and paper complaints are scanned.

39. On days when the court is open, the Norfolk Circuit Court Clerk's office opens to the press and the public at 8:45 a.m. and closes at 5:00 p.m. The clerk only accepts new filings and copy requests until 4:30 p.m. Reporters must leave the clerk's office when it closes at 5:00 p.m.

40. Starting on January 1, 2018 and continuing through June 30, 2018, CNS tracked the rate and length of delays in press access to newly-filed civil complaints in the Norfolk Circuit

Court. As shown in the data below, only 16% of newly-filed complaints were made available on the day of filing; 13% were delayed until the next day; 21% were delayed for two days; and 50% were delayed for three days or more:

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/03/18 | 11 | 0 | 0 | 0 | 11 | 2/01/18 | 5 | 0 | 0 | 0 | 5 |
| 1/09/18 | 9 | 1 | 0 | 7 | 1 | 2/02/18 | 2 | 0 | 0 | 0 | 2 |
| 1/10/18 | 2 | 0 | 1 | 0 | 1 | 2/05/18 | 2 | 0 | 1 | 1 | 0 |
| 1/11/18 | 4 | 0 | 0 | 0 | 4 | 2/06/18 | 3 | 0 | 0 | 3 | 0 |
| 1/16/18 | 17 | 1 | 0 | 14 | 2 | 2/07/18 | 2 | 0 | 2 | 0 | 0 |
| 1/17/18 | 1 | 0 | 0 | 1 | 0 | 2/08/18 | 9 | 4 | 0 | 0 | 5 |
| 1/18/18 | 1 | 0 | 1 | 0 | 0 | 2/09/18 | 4 | 1 | 0 | 0 | 3 |
| 1/19/18 | 4 | 0 | 0 | 0 | 4 | 2/12/18 | 4 | 1 | 0 | 1 | 2 |
| 1/22/18 | 11 | 2 | 9 | 0 | 0 | 2/13/18 | 2 | 2 | 0 | 0 | 0 |
| 1/23/18 | 1 | 0 | 1 | 0 | 0 | 2/14/18 | 2 | 0 | 2 | 0 | 0 |
| 1/24/18 | 5 | 1 | 3 | 1 | 0 | 2/15/18 | 4 | 1 | 1 | 0 | 2 |
| 1/25/18 | 3 | 2 | 1 | 0 | 0 | 2/16/18 | 3 | 2 | 0 | 0 | 1 |
| 1/26/18 | 7 | 0 | 0 | 0 | 7 | 2/18/18 | 1 | 0 | 1 | 0 | 0 |
| 1/27/18 | 1 | 0 | 0 | 0 | 1 | 2/20/18 | 4 | 0 | 0 | 2 | 2 |
| 1/29/18 | 8 | 0 | 0 | 0 | 8 | 2/22/18 | 8 | 1 | 0 | 0 | 7 |
| 1/30/18 | 5 | 1 | 0 | 2 | 2 | 2/23/18 | 7 | 2 | 0 | 0 | 5 |
| 1/31/18 | 7 | 1 | 1 | 5 | 0 | 2/26/18 | 8 | 0 | 1 | 2 | 5 |
|  |  |  |  |  |  | 2/27/18 | 4 | 2 | 0 | 2 | 0 |
|  |  |  |  |  |  | 2/28/18 | 5 | 0 | 3 | 2 | 0 |

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/01/18 | 4 | 0 | 0 | 0 | 4 | 4/02/18 | 4 | 1 | 0 | 0 | 3 |
| 3/02/18 | 5 | 2 | 0 | 0 | 3 | 4/03/18 | 3 | 2 | 0 | 0 | 1 |
| 3/05/18 | 9 | 0 | 2 | 0 | 7 | 4/04/18 | 2 | 1 | 0 | 0 | 1 |
| 3/06/18 | 3 | 3 | 0 | 0 | 0 | 4/05/18 | 5 | 0 | 0 | 0 | 5 |
| 3/07/18 | 7 | 0 | 2 | 0 | 5 | 4/06/18 | 4 | 0 | 0 | 0 | 4 |
| 3/08/18 | 4 | 0 | 0 | 0 | 4 | 4/09/18 | 5 | 1 | 0 | 3 | 1 |
| 3/09/18 | 8 | 2 | 0 | 0 | 6 | 4/10/18 | 1 | 0 | 0 | 0 | 1 |
| 3/12/18 | 6 | 0 | 0 | 6 | 0 | 4/11/18 | 3 | 0 | 3 | 0 | 0 |
| 3/13/18 | 3 | 0 | 2 | 1 | 0 | 4/12/18 | 3 | 1 | 0 | 0 | 2 |
| 3/14/18 | 7 | 3 | 4 | 0 | 0 | 4/13/18 | 6 | 2 | 0 | 0 | 4 |
| 3/15/18 | 12 | 5 | 2 | 0 | 5 | 4/16/18 | 2 | 0 | 0 | 2 | 0 |
| 3/16/18 | 2 | 1 | 0 | 0 | 1 | 4/17/18 | 1 | 0 | 0 | 0 | 1 |
| 3/19/18 | 6 | 1 | 0 | 4 | 1 | 4/18/18 | 5 | 1 | 0 | 4 | 0 |

15

I-1552841.2

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/20/18 | 6 | 2 | 0 | 4 | 0 | 4/19/18 | 4 | 0 | 1 | 0 | 3 |
| 3/21/18 | 2 | 1 | 1 | 0 | 0 | 4/20/18 | 1 | 0 | 0 | 0 | 1 |
| 3/22/18 | 5 | 0 | 1 | 0 | 4 | 4/23/18 | 6 | 0 | 0 | 0 | 6 |
| 3/23/18 | 8 | 0 | 0 | 0 | 8 | 4/24/18 | 3 | 1 | 0 | 0 | 2 |
| 3/26/18 | 5 | 1 | 0 | 0 | 4 | 4/25/18 | 2 | 0 | 0 | 0 | 2 |
| 3/27/18 | 1 | 0 | 0 | 0 | 1 | 4/26/18 | 3 | 0 | 0 | 0 | 3 |
| 3/29/18 | 7 | 0 | 0 | 0 | 7 | 4/27/18 | 9 | 1 | 0 | 0 | 8 |
| 3/30/18 | 13 | 6 | 0 | 0 | 7 | 4/30/18 | 9 | 0 | 0 | 0 | 9 |

| DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D | DATE | # COMPL. REVIEWED | SD | 1D | 2D | 3+D |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/01/18 | 3 | 2 | 0 | 0 | 1 | 6/01/18 | 4 | 1 | 0 | 0 | 3 |
| 5/02/18 | 5 | 0 | 0 | 0 | 5 | 6/04/18 | 6 | 2 | 1 | 2 | 1 |
| 5/03/18 | 6 | 3 | 0 | 0 | 3 | 6/05/18 | 3 | 1 | 0 | 2 | 0 |
| 5/04/18 | 3 | 0 | 0 | 0 | 3 | 6/06/18 | 4 | 1 | 0 | 0 | 3 |
| 5/07/18 | 18 | 4 | 0 | 13 | 1 | 6/07/18 | 3 | 0 | 0 | 0 | 3 |
| 5/08/18 | 1 | 0 | 0 | 0 | 1 | 6/08/18 | 7 | 0 | 0 | 0 | 7 |
| 5/09/18 | 2 | 0 | 0 | 2 | 0 | 6/11/18 | 11 | 1 | 4 | 6 | 0 |
| 5/10/18 | 4 | 2 | 0 | 0 | 2 | 6/12/18 | 1 | 0 | 0 | 1 | 0 |
| 5/11/18 | 2 | 0 | 0 | 0 | 2 | 6/14/18 | 9 | 0 | 1 | 0 | 8 |
| 5/14/18 | 4 | 0 | 0 | 4 | 0 | 6/15/18 | 3 | 0 | 0 | 0 | 3 |
| 5/15/18 | 4 | 2 | 0 | 2 | 0 | 6/18/18 | 10 | 1 | 0 | 1 | 8 |
| 5/16/18 | 6 | 0 | 2 | 4 | 0 | 6/19/18 | 1 | 0 | 0 | 0 | 1 |
| 5/17/18 | 3 | 0 | 0 | 0 | 3 | 6/20/18 | 5 | 2 | 0 | 2 | 1 |
| 5/18/18 | 3 | 1 | 0 | 0 | 2 | 6/21/18 | 6 | 0 | 1 | 0 | 5 |
| 5/21/18 | 4 | 0 | 0 | 4 | 0 | 6/22/18 | 1 | 0 | 0 | 0 | 1 |
| 5/22/18 | 3 | 2 | 0 | 1 | 0 | 6/25/18 | 6 | 0 | 5 | 1 | 0 |
| 5/23/18 | 4 | 1 | 1 | 2 | 0 | 6/26/18 | 3 | 1 | 1 | 0 | 1 |
| 5/24/18 | 3 | 0 | 1 | 0 | 2 | 6/27/18 | 6 | 1 | 5 | 0 | 0 |
| 5/25/18 | 4 | 1 | 0 | 0 | 3 | 6/28/18 | 8 | 0 | 6 | 0 | 2 |
| 5/29/18 | 11 | 3 | 0 | 8 | 0 | 6/29/18 | 7 | 0 | 0 | 0 | 7 |
| 5/30/18 | 3 | 0 | 2 | 1 | 0 | | | | | | |
| 5/31/18 | 6 | 0 | 2 | 0 | 4 | | | | | | |

| Overall | # Reviewed | % |
|---|---|---|
| Same day ("SD") | 95 | ~16 |
| 1 day delay ("1D") | 78 | ~13 |
| 2 days delay ("2D") | 123 | ~21 |
| 3+ days delay ("3+D") | 290 | ~50 |
| Total | 586 | 100 |

16

I-1552841.2

41. The delays in the Norfolk Circuit Court are continuing, and are preventing CNS – and by extension its readers, including both CNS subscribers and non-subscribers – from obtaining contemporaneous information about important new civil actions.

D. **Harms Caused By Delays In Access**

42. The policies and practices of the Defendants of withholding complaints from the press and the public until after administrative processing result in the public not knowing that a person or entity has been haled into court, often for days and sometimes weeks. Even if the press or public find out a new action has been filed, there is no way for them to learn about the factual allegations or legal claims without having access to the actual complaint.

43. Delays in access hurt news coverage of new civil actions filed in these Virginia Circuit Courts, as the newsworthiness of a new civil action declines with time. Civil actions not reported on the day of filing are either not covered at all or receive less prominent coverage, and are thus less likely to grab the public's attention and be the subject of public discussion. Furthermore, any news reports about withheld complaints are prone to inaccuracies, because the reporter cannot read for him/herself the factual and legal allegations made in the complaint.

**COUNT ONE**
**Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**
**(Denial of Contemporaneous Access to Civil Complaints)**
**(Against Defendants Schaefer and Smith)**

44. CNS incorporates and repeats the allegations of Paragraphs 1 – 43 herein.

45. Defendants' actions under color of state law, including without limitation, their policy and practice of withholding newly-filed civil complaints from press and public view until after processing, and the resulting denial of contemporaneous access to new civil complaints received for filing in the Norfolk and Prince William Circuit Courts, deprive CNS, and by

extension its subscribers and the public, of the right of access to court records secured by the First Amendment to the U.S. Constitution.

46. There is no compelling or overriding interest sufficient to justify Defendants' actions resulting in the denial of contemporaneous access to new complaints under the First Amendment. Even if an overriding or compelling interest did exist, there are far less restrictive means of protecting any such interest. As such, Defendants' policies and practices are not narrowly tailored, as required by law.

47. CNS has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of CNS' First Amendment rights. CNS is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to CNS, its subscribers, and other readers of its news reports.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Courthouse News Service seeks judgement in its favor and against Defendants George E. Schaefer, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia, and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia, as follows:

1. For preliminary and permanent injunctions against Defendants, in their official capacities, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them permanently from continuing their policies and practices resulting in delayed access to new civil complaints, including, *inter alia*, their practices of denying access to new complaints until after

administrative processing and requiring them to provide timely and contemporaneous access to newly-filed civil complaints.

2. For a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly effect delays in access to newly-filed civil complaints as unconstitutional under the First and Fourteenth Amendments to the United States Constitution, for the reason that Defendants' policies and practices constitute an effective denial of access to court records.

3. For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. For all other relief the Court deems just and proper.

Dated: July 19, 2018               Respectfully submitted,

                                    */s/*
                                    Conrad M. Shumadine
                                    VSB #4325
                                    Counsel for Plaintiff
                                    Willcox & Savage, P.C.
                                    440 Monticello Avenue, Suite 2200
                                    Norfolk, VA 23510
                                    Telephone: (757) 628-5500
                                    Fax: (757) 628-5566
                                    cshumadine@wilsav.com

                                    **Of Counsel:**

                                    William Hibsher (*To Be Admitted Pro Hac Vice*)
                                    Counsel for Plaintiff
                                    Bryan Cave Leighton Paisner LLP
                                    1290 Avenue of the Americas
                                    New York, NY 10104
                                    Telephone: (212) 541-2000
                                    Fax: (212) 541-4630
                                    wjhibsher@bclplaw.com

Heather S. Goldman (*To Be Admitted Pro Hac Vice*)
Bryan J. Harrison (*To Be Admitted Pro Hac Vice*)
Counsel for Plaintiff
Bryan Cave Leighton Paisner LLP
1155 F Street, NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Fax: (202) 508-6200
heather.goldman@bclplaw.com
bryan.harrison@bclplaw.com