**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-391-HCM |
| | ) | |
| GEORGE E. SCHAEFER, in his official | ) | |
| capacity as Clerk of the Circuit Court for | ) | |
| Norfolk, Virginia, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Defendants, George E. Schaefer, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia (the "Norfolk Clerk") and Jacqueline C. Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia (the "Prince William Clerk") (collectively, the "Defendants" or "Clerks"), by counsel, oppose the Application for Attorneys' Fees and Costs (the "Fee Petition") filed by the Plaintiff, Courthouse News Service ("CNS").  The Clerks oppose the amount of attorneys' fees and costs sought in the Fee Petition for a variety of reasons articulated herein, including because: the hourly rates charged by CNS's attorneys exceed the prevailing market rate in the Norfolk legal community, CNS did not prevail regarding its request for a permanent injunction against the Clerks, and CNS's request for reimbursement of all travel-related expenses incurred by its lawyers and staff is excessive and unreasonable.

**PRELIMINARY STATEMENT**

After obtaining declaratory relief against the Clerks at trial, and although this Court denied CNS's request for a permanent injunction, CNS has filed a Fee Petition seeking $2,258,505.83 in

attorneys' fees and costs related to the prosecution of this case.  The breakdown of CNS's Fee Petition is as follows:  CNS seeks attorneys' fees in the amount of $1,890,198.50 and expenses in the amount of $232,559.83.  CNS also seeks attorneys' fees in the amount of $135,747.50 in connection with the filing of this Fee Petition.

The amount of attorneys' fees and expenses sought by CNS should be significantly reduced because the hourly rates from the Bryan Cave Leighton & Paisner lawyers are inconsistent with the prevailing market rates in the Norfolk/Hampton Roads legal community.  Further, the number of hours for which compensation is sought is unreasonable because the time entries reflect instances of block billing, duplication of work, time billed that is attributable to CNS's unsuccessful motion for a preliminary injunction, time billed that is attributable to CNS's unsuccessful motion for a summary judgment, and vague and inadequate task descriptions.

CNS is seeking reimbursement for a significant number of expenses incurred in this matter, most of which are travel-related expenses (charges for transportation, lodging and meals) incurred in bringing lawyers and staff from Washington, D.C. and New York to handle depositions, hearings, meetings and conduct the trial.  These expenses should be deducted from CNS's reimbursement request because the requisite legal services were available in Norfolk had CNS chosen to retain a local firm.

After applying the appropriate rate and hourly deductions for the lodestar calculation, CNS's request for fees and expenses should be reduced by no less than 40% because CNS did not succeed in obtaining a permanent injunction, which it requested in the Complaint and actively sought at trial.  CNS was also unsuccessful in obtaining a preliminary injunction, which it ultimately withdrew, and did not prevail on its motion for summary judgment.  Nevertheless, CNS seeks reimbursement for attorneys' fees and costs related to these unsuccessful motions and

claims.  A reduction of the overall fee award by 40% is further justified because CNS is seeking reimbursement for attorneys' fees incurred before the lawsuit was filed.

## FACTUAL SUMMARY

The Court is no doubt familiar with the procedural history, factual background and legal issues in this case.  CNS filed a lawsuit against the Clerks under 42 U.S.C. § 1983 seeking two remedies: (1) a permanent injunction requiring the Clerks to provide CNS with access to newly-filed civil complaints in their respective offices before administrative processing occurs; and (2) a declaratory judgment finding that the First Amendment guarantees a right of access to newly-filed civil complaints "contemporaneously" with their filing.  The Clerks filed a motion to dismiss the complaint, arguing that the Office of the Executive Secretary of the Supreme Court of Virginia ("OES") was an indispensable party, and further arguing that the Prince William Clerk was misjoined in this lawsuit because the claims against her constitute separate transactions or occurrences for purposes of Rule 20, and therefore, divisional venue in the Norfolk Division was improper as to her.

While the motion to dismiss was pending, the Clerk's filed a second motion for abstention, which was primarily predicated on the Seventh Circuit's newly released decision abstaining under identical circumstances.  *See CNS v. Brown*, 908 F.3d 1063, 1066 (7th Cir. Nov. 13, 2018).  The abstention motion urged the Court to consider the interests of federalism and abstain from exercising its jurisdiction over a lawsuit seeking federal intervention in the administration of the Virginia judiciary. This lawsuit is particularly concerning, it was argued, because the district court itself did not meet the standard of care that CNS argued was required under the *First Amendment*. On March 13, 2019, the Court held a hearing on both motions.  At the hearing, the Court denied both motions from the bench, and subsequently issued an Opinion and Order explaining its rulings.

3

The parties conducted discovery in the normal course, including extensive written discovery, depositions (including the 30(b)(6) corporate designees of CNS, the Norfolk Clerk and the Prince William Clerk), and exchanging expert reports. In total, CNS took nine factual depositions (including depositions of Defendants' corporate designees) and Defendants took four fact depositions (including a deposition of CNS's corporate designee). Notably, no motions to compel were filed, as the parties were able to resolve any issues or difficulties regarding discovery matters without court intervention.

CNS devotes significant time in its Fee Petition to the procurement of the OES Filing Data, which is a voluminous spreadsheet containing the raw filing data maintained by OES for the Norfolk and Prince William Circuit Courts. The OES Filing data was admitted into evidence as a "joint exhibit," meaning that its authenticity and accuracy was not in dispute. The OES Filing Data is maintained by OES, not the Clerks. To obtain this data, CNS and the Clerks had to submit a request to OES through the Office of the Attorney General. Ultimately, CNS served a document subpoena to obtain the various fields of filing data it wanted. CNS also conducted a Rule 30(b)(6) examination of CNS's corporate designee in order to understand the contents of the raw data spreadsheet. The OES Filing Data was admitted into evidence, and the OES 30(b)(6) deposition transcript was read into evidence at trial. Indeed, the Court recognized the importance of the OES Filing Data in its February 21, 2020 Opinion and Order, as it conducted its own *de novo* review of the spreadsheets obtained from OES, which, in large part, formed the basis of its ruling.

On April 26, 2019, the parties filed cross motions for summary judgment. Each side thoroughly briefed their respective summary judgment motions. After a continuance of the trial scheduled to commence on October 29, 2019, the parties appeared before the Court on January 16, 2020 for a Final Pretrial Conference. At the Final Pretrial Conference, the Court heard oral

4

arguments on these motions. The Court denied both motions on the grounds that material facts were genuinely disputed by the parties, precluding summary judgment to either party.  At the Final Pretrial Conference, the Court stated that CNS "didn't get an injunction, which means that the attorney's fees should be less than if they had gotten one.  They have tried to cooperate to resolve the problem, which also means that they would get less attorney's fees than they otherwise would." *See* ECF No. 76, at 46.

On January 31, 2020, the parties commenced a bench trial in this matter. At the conclusion of the trial, the Court denied CNS's request for a permanent injunction, but issued a declaratory judgment against the Clerks.  The Court's declaration stated that:

1. The press and public, including CNS, enjoy a qualified right of access to newly-filed civil complaints contemporaneous with the filing of the complaint.

2. "Contemporaneous" in this context means "the same day on which the complaint is filed, insofar as is practicable;" and, when not practicable, on the next court date.

The Court further declared that a reasonable expectation is that 85-90% of new civil filings will be accessible to the public and press on the date of filing.

While rendering its ruling from the bench, the Court explicitly stated that "[s]ince the Court is not imposing an injunction, that of course affects the extent to which the plaintiff has prevailed in this case, because the plaintiff sought an injunction.  I say that because the plaintiff is entitled to attorney's fees, and one of the factors is the extent to which the plaintiff has prevailed."  ECF No. 92 at 594.

After the Court issued its ruling from the bench, the Clerks requested a certificate of appealability regarding the Court's ruling.  The Court granted this request, and certified various

issues for appeal.  Consistent with the Court's instructions, the Clerks timely filed a petition for permission to appeal, which was granted by the Fourth Circuit on April 2, 2020.

On March 4, 2020, CNS filed this Fee Petition seeking to recover substantial attorneys' fees in the amount of $1,890,198.50 and expenses in the amount of $232,559.83 related to the district court action.  CNS also seeks attorneys' fees in the amount of $135,747.50 in connection with filing the Fee Petition.  The Fee Petition contains three supporting declarations and approximately 209 pages of attorney billing entries, 432 pages of claimed non-taxable expenses, 46 pages of expert witness invoices, and 23 pages of claimed taxable costs.  In total, the Fee Petition seeks to recover **$2,258,505.83** in total attorneys' fees and costs.  For the reasons stated below, this amount should be significantly reduced.

## ARGUMENT

### The Legal Standard to Evaluate the Reasonableness of CNS's Fee Petition.

The proper calculation of an attorneys' fee award involves a three-step process.  First, the Court determines the lodestar figure by multiplying the number of reasonable hours worked by a reasonable hourly rate.  *McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013).  To determine the reasonableness of the hours expended and the rates applied, the Court considers the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]  *Id.* at

---

[1] The Fourth Circuit has characterized the twelve *Johnson* factors as follows:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

6

88. (citation omitted).  Second, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones."  *Id.*  Last, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."  *Id.*; *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009).  The Court reduces fees at this last step to account for attorney time dedicated to the litigation as a whole that related to successful and unsuccessful claims.  *Crump v. United States Dep't of Navy by & through Mabus*, 245 F. Supp. 3d 692, 700 (E.D. Va. 2017). At the third step, "[w]hat the court must ask is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'"  *Id.* (citing *McAfee*, 738 F.3d at 92); *Sierra Club v. Va. Elec. & Power Co.*, Civil Action No. 2:15-cv-112-JAG, 2017 U.S. Dist. LEXIS 220178, at *4-5 (E.D. Va. Dec. 12, 2017).

It is CNS's burden to prove, by clear and convincing evidence, that its requested fee is reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Guidry v. Clare*, 442 F. Supp. 2d 282, 287, 294 (E.D. Va. 2006); *Suntrust Mortg*, 933 F. Supp. 2d at 770.

**A.    CNS's Request for Attorneys' Fees Should be Substantially Reduced Because the Rates and Number of Hours Billed are Unreasonable.**

The first task is to calculate a lodestar fee figure which is determined by multiplying a reasonable hourly rate by the number of hours reasonably and necessarily incurred in performing the services for which the fee application is made.  *See Suntrust Mortg. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 770 (E.D. Va. 2013).

-----

*See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting twelve factors for determining the reasonableness of attorney's fees that Fifth Circuit identified in *Johnson*); *McAfee v. Boczar*, 738 F.3d 81, 88 n.5 (4th Cir. 2013).

1. **The BCLP rates are unreasonable because they are considerably higher than rates in the Norfolk legal market.**

The principles respecting determination of a reasonable rate are well-settled in this circuit. As the fee applicant, CNS bears the burden of establishing the reasonableness of its requested hourly rates. *See Robinson*, 560 F.3d at 244; *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). In addition to the applicant's own affidavit, the applicant must produce "satisfactory specific evidence of the prevailing market rates" for the work performed in the relevant market. *Id.* A fee applicant is obliged to show that the requested hourly rates are consistent with "the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award." *Plyler*, 902 F.2d at 277.

The evidence deemed necessary by the Fourth Circuit to show prevailing market rates includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245; *see McAfee*, 738 F.3d at 91. The relevant community is the "community in which the court where the action is prosecuted sits," unless "the complexity and specialized nature of the case" mean that no local attorney has the required skills. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175, 179 (4th Cir. 1994); *National Wildlife Federation v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) (it is established that "[t]he community in which the court sits is the appropriate starting point for selecting the proper rate"). In this case, the relevant community for determining reasonable attorney rates is Norfolk, Virginia.

In *National Wildlife Federation v. Hanson*, the Fourth Circuit acknowledged that "'[n]evertheless, '[t]he complexity and specialized nature of a case may mean that no attorney with the required skills, is available locally.'" *Id.* (citation omitted). In that situation, two factors determine whether an exception to the general rule (determining the rate based upon the

8

community in which the Court sits) should be permitted.  First, the Court should ask "are services of like quality truly available in the locality where the services are rendered; and [second,] did the party choosing the attorney from elsewhere act reasonably in making that choice?" *Id.*

It is the burden of the fee applicant to establish the existence of this exception.  To meet this burden, the fee applicant must introduce evidence upon which such a conclusion can be founded.  *Suntrust Mortg. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 770 (E.D. Va. 2013).

The Clerks do not challenge to the reasonableness of rates of Willcox & Savage, CNS's local counsel in this case.  The Willcox & Savage rates are commensurate with the market rates charged by lawyers for cases such as this one in the Norfolk legal market, and should set the baseline for reasonable rates in this case.  The challenge instead, is to the reasonableness of the rates sought by Bryan Cave Leighton & Pasiner, LLP ("BCLP").

The Fee Petition uses the rates charged by lawyers and staff from BCLP who are based in New York and Washington, D.C.  The partner on the case, Mr. Hibsher, charged an hourly rate of $730.  The senior associate on the case, Ms. Goldman, charged an hourly rate of $590.  The junior associate on this case, Mr. Harrison, charged an hourly rate of $545.  The paralegal on this case, Ms. Weiss, charged an hourly rate of $290.  It is unreasonable, however, to predicate the rates sought in the underlying Fee Petition upon the rates charged by these out-of-jurisdiction lawyers.

The issues in this case are not highly complex or specialized.  This is a § 1983 case seeking injunctive and declaratory relief against two Virginia Circuit Court Clerks regarding access to newly-filed civil complaints in their jurisdictions.  The parties obtained filing data from OES, which reflected the filing statistics for these jurisdictions.  Although the parties interpreted the data differently, none of the factual issues were highly complex in nature.  But even if the issues at stake were highly complex, it does not dictate that extra-jurisdictional rates must be used in the

9

reasonable rate calculation of the lodestar because "the novelty and complexity of a case generally may not be used as a ground for enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue v. Kenny A.*, 559 U.S. 542, (2010). In other words, the novelty and complexity of the case is a factor that is to be accounted for in the billable hours component of the lodestar calculation, not as a component of the reasonable rate component of the lodestar calculation. *See Suntrust Mortg.*, 933 F. Supp. 2d at 771.

In this case, there was no reason to retain extra-jurisdictional counsel because CNS has not proven, or even attempted to prove, that the services required to deal with the First Amendment issues in this case were truly not available in the Norfolk market. As noted above, this case did not require specialized skills or knowledge to deal with complex or specialized issues. This case is a First Amendment case concerning access to newly-filed complaints in the Norfolk and Prince William Circuit Courts. In the Norfolk area, there are many firms that regularly handle litigation of the degree of sophistication presented in this case. Richard H. Ottinger, Esquire, a local attorney retained by Defendants to review CNS's Fee Petition, notes that Willcox & Savage, P.C., Kaufman & Canoles, P.C., Vandeventer Black LLP, Williams Mullen, and Troutman Sanders, to name a few, are all firms capable of handling cases such as this. *See* Ottinger Aff. ¶¶ 15-17.

More importantly, it is incumbent upon CNS, as the proponent of the extra-jurisdictional rates charged by BCLP, to present specific evidence from which the Court can find that the case is complex and that it requires specialized legal services not available in the Norfolk area. There is no evidence to that effect. To the contrary, CNS's local counsel, Willcox & Savage, is fully capable of handling cases of this sort and indeed advertises itself as capable of handling such

10

disputes. *See* Ottinger Aff. ¶ 16. Mr. Shumadine is well-known for his expertise and ability in the First Amendment area of law and has litigated numerous First Amendment cases before this Court.

CNS apparently believes that the hourly rates charged by the BCLP lawyers and staff are reasonable for the Norfolk area. Mr. Ottinger, however, states these rates are not reasonable and are considerably higher than the prevailing market rates in Norfolk for equally qualified and experienced attorneys. *See* Ottinger Aff. ¶¶ 14, 17 and 18. Mr. Ottinger has opined that the prevailing market rates in the Norfolk/Hampton Roads legal market for this type of work is are follows: (1) a reasonable rate for a senior partner with a complex litigation practice in Norfolk is between $400-$500; (2) a reasonable rate for a junior partner with some complex litigation experience in Norfolk is be between $300-$375; (3) a reasonable rate for a senior associate with some complex litigation experience in Norfolk is be between $225-$275; and (4) a reasonable rate for a paralegal with some complex litigation experience in Norfolk is be between $125-$225. *See id.* at 18.

In this case, the record shows that the prevailing market rate in the Norfolk area for the services at issue can be measured by looking at the rates charged by Willcox & Savage. Mr. Shumadine charged an hourly rate of $450. In Mr. Ottinger's view, the rates charged by Willcox & Savage, including Mr. Shumadine, are reasonable for the Norfolk legal market. While the record does not show a separate associate rate for a Willcox & Savage associate, it is Mr. Ottinger's opinion that the prevailing market rate in Norfolk for an associate litigating a case of this type is between $225 and $300 per hour. It is further reasonable to award to BCLP the same for BCLP paralegals as charged by paralegals at Willcox & Savage. *See* Ottinger Aff. ¶¶ 20-23. The prevailing market rate in the Norfolk area for the services at issue can be measured by looking at the rates charged by Willcox & Savage in this case. Accordingly, the Willcox & Savage rates

11

($450 per hour for partners, $210 for paralegals) should be used to calculate the appropriate rate component for the lodestar calculation in connection with the Fee Petition.

The Clerks also obtained opinions from two other local practitioners, David N. Ventker and James R. Theuer, regarding the reasonableness of the BCLP hourly rates. *See* Ottinger Aff, Ex. 1. Both Mr. Ventker and Mr. Theuer have opined that the billed hourly rates of Mr. Hibsher, Ms. Goldman, Mr. Harrison, and Ms. Weiss in this matter are unreasonable because they are considerably above the prevailing market rates in the Norfolk/Hampton Roads area. Mr. Ventker opines that the reasonable hourly rates for senior partners are between $400 and $500 per hour; for junior partners are $250 and $425 per hour, for associates are between $175 and $275 per hour, and for paralegals are between $125 and $175 per hour. Similarly, Mr. Theuer has opined that in Hampton Roads, a reasonable hourly rate for senior partners is between $425 and $500; a reasonable hourly rate for attorneys with some complex litigation experience and twelve years' experience such as Ms. Goldman is between $275 and $325; the reasonable hourly rate for attorneys with some complex litigation experience and six years of experience such as Mr. Harrison is between $225 and $275; and reasonable hourly rates for paralegals with some complex litigation experience are between $90 and $125). *See* Ottinger Aff. Ex. 1.

Both Mr. Ventker and Mr. Theuer are of the view that the $450 hourly rate charged by Mr. Shumadine is within the range of prevailing market rates in Norfolk/Hampton Roads. Mr. Shumadine's rate should be used as an example of a reasonable hourly rate for an attorney of his experience and skill in federal civil litigation and First Amendment claims in the Norfolk market. Mr. Hibsher, Ms. Goldman, and Mr. Harrison do not have the same level of experience as Mr. Shumadine, yet are charging higher rates.

The Fourth Circuit has characterized a rate of $585 for lead counsel as "excessive" and even "exorbitant." *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013). Another court in this district has characterized a rate of $420 per hour as "the upper limit for what counts as a reasonable rate for a very competent attorney in an uncomplicated . . . dispute." *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 619-21 n.12 (E.D. Va. 2015) (describing the litigation as a "straightforward lease dispute" that "did not present complex or novel legal issues and did not require extensive fact-finding," and, accordingly, ruling that a rate of $575 per hour for a law firm partner with more than twenty years of experience should be reduced to $420 per hour).

In sum, the record does not establish this case was so complex that it required specialized skills that were not available in the Norfolk legal market. Therefore, in this case, the general rule must apply, and the prevailing market rates in the Norfolk legal community must be used to calculate the reasonable rate component for the lodestar calculation. The Court can look to the rates charged by Willcox & Savage to calculate a reasonable rate in the Norfolk market. Based on the prevailing market rates in the Norfolk legal market, and consistent with the opinions proffered by Mr. Ottinger, Mr. Venker and Mr. Theuer, the adjustments reflected in the below Table to the hourly rates charged by BCLP attorneys and staff is appropriate:

**TABLE 1**

| Name | Title | Requested Rate | Adjusted Rate |
|------|-------|----------------|---------------|
| William Hibsher | Partner | $730 | $450 |
| Heather Goldman | Associate | $590 | $300 |
| Bryan Harrison | Associate | $545 | $275 |
| Eileen Weiss | Paralegal | $290 | $210 |

13

**2.      The Number of Hours Sought by CNS is Excessive and Unreasonable.**

In the lodestar method of fee determination, the fee applicant must demonstrate that "the number of hours for which compensation is sought [is] reasonable." *Suntrust Mortg. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 774 (E.D. Va. 2013) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 2013 U.S. Dist. LEXIS 16295, 2013 WL 458532, at *4. To meet this burden, the fee applicant must document the need to have devoted the amount of time for which it seeks compensation. To do so, the applicant must tender reliable billing records, and it must exercise billing judgment to excise from its claim time not properly shown to have been incurred in pursuit of the matter at issue or that is otherwise not reasonable in amount or not necessarily incurred. *Hensley v. Eckerhart*, 461 U.S. at 433-34.

In this case, BCLP's time records are defective and unreliable in several respects. First, the Fee Petition does not contain the regular monthly billing invoices submitted to CNS for payment. *See* Pl.'s Mem., Hibsher Decl., Exs. E and F.  Instead, the records containing the BCLP time entries appear to be billing entries created from the original monthly billing invoices. While CNS attempts to authenticate these itemized billing entries through the declarations of Mr. Hibsher, and Ms. Matteo-Boehm, these are not the original billing invoices sent to CNS for payment.  Without the benefit of the original monthly invoices, it is impossible for the Clerks to access the accuracy of the billing entries or whether the entries were reconstructed after the fact. This also raises concerns addressed by the best-evidence rule, which holds an original of a document is superior evidence, and further specifies that secondary evidence, such as a copy of facsimile, will not be admissible if an original document exists and can be obtained.  *See* Fed. R. Evid. 1002-1004.

In *Hensley v. Eckerhart*, 461 U.S. at 433, the Supreme Court held that the party seeking an award of fees must submit evidence to support the hours worked and that, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." As Judge Ellis explained in *Guidry v. Clare*, 442 F. Supp. 2d 282 (E.D. Va. 2006), "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *Id.* at 294 (citation omitted). "[I]ndeed, fee claimants must submit documentation that reflects 'reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity,' sufficient to permit the Court to weigh the hours claimed and exclude hours that were not 'reasonably expended.'" *Id.* (citation omitted). And, "[i]nadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id.* (citation omitted).

Accordingly, "[l]umping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." *Id.* The reduction "can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or an amount based on the trial court's familiarity with the case, its complexity and the counsel involved." *Id.* As Judge Smith explained in *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704 (E.D. Va. 2012), "[w]hile perhaps 'block billing' is not prohibited, it simply does not provide the court with the sufficient breakdown to meet [the applicant's] burden to support its fee request in specific instances." *Id.* at 716.

In *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568 (E.D. Va. 1988), Judge Ellis explained that the Court can reduce or deny a requested fee award if the applicant fails to submit proper documentation. *Id.* at 575-76; s*ee also Vocca v. Playboy Hotel of Chicago, Inc*., 686 F.2d 605, 607-08 (7th Cir. 1982). Proper documentation was defined to be that which "reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity." *Guidry*, 442 F. Supp. 2d at 294 (citing *EEOC v. Nutri/System, Inc.*, 685 F. Supp. at 573). A fee applicant cannot establish the reasonable time component of the lodestar approach by clear and convincing evidence without time records that meet this standard.

Second, the number of hours for which compensation is sought is unreasonable and excessive because the time entries reflect instances of block billing, duplication of work, intraoffice conferences, time billed that is attributable to CNS's unsuccessful motion for a preliminary injunction, time billed that is attributable to CNS's unsuccessful motion for a summary judgment, and vague and inadequate task descriptions. Defendants have thoroughly reviewed the billing entries attached as Exhibits E and F to Mr. Hibsher's declaration and have compiled a chart showing the entries being challenged. The chart shows the date, timekeeper, hours billed, description of the entry, and reason for disallowance. The chart is attached as Exhibit 2 to Mr. Ottinger's declaration. *See* Ottinger Decl., Ex. 2.

"The court must necessarily exclude any hours that are . . . not reasonably expended on the litigation." *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 670 (4th Cir. 2004). "[The Fourth Circuit has] been sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney." *Rum Creek*, 31 F.3d at 180. As such, the court will "award fees for the time of one attorney when an issue does not require the attention of multiple lawyers." *Cox v. Reliance Std. Life Ins. Co.*, 179 F. Supp. 2d 630, 636 (E.D. Va. 2001).

16

The below Table reflects the appropriate reduction in hours billed by the BCLP attorneys and staff in connection with this matter:

**TABLE 2**

| Name | Title | Requested Hours | Adjusted Hours |
|------|-------|-----------------|----------------|
| William Hibsher | Partner | 883.3 | 754 |
| Heather Goldman | Associate | 1,204 | 1,071 |
| Bryan Harrison | Associate | 752.6 | 653.3 |
| Eileen Weiss | Paralegal | 198.3 | 169 |

**B.      CNS's Request for Travel-Related Expenses is Excessive.**

CNS has requested reimbursement of non-taxable expenses in the amount of $232,559.83. Most of these expenses, however, are travel-related expenses (charges for transportation, lodging and meals) incurred in bringing lawyers and staff from Washington, D.C. and New York to handle depositions, hearings, meetings and conduct the trial. For example, CNS is seeking reimbursement for all the expenses associated with flying to Norfolk for depositions, hearings, the initial pretrial, conference, the final pretrial conference, and the trial. For reasons previously explained, these expenses should be deduced from CNS's reimbursement request because the requisite legal services were available in Norfolk had CNS chosen to retain a local firm. It is not reasonable to require Defendants to bear the burden of CNS's decision to hire a law firm outside the Norfolk area to handle this case. Defendants have thoroughly reviewed the expense invoices attached as Exhibit G to Mr. Hibsher's Declaration and have compiled a chart showing the expenses being

challenged.  The chart shows reason for disallowance for each specific expense.  The chart is attached as Exhibit 3 to Mr. Ottinger's declaration.  *See* Ottinger Decl., Ex. 4.

The below Table reflects the appropriate reduction for unnecessary expenses:

**TABLE 3**

|  | Requested Amount | Reduction | Total |
|---|---|---|---|
| **Expenses under 42 U.S.C. § 1988** | $232,559.83 | ($33,269.82) | **$199,290.01** |

### C.   The Court Should Reduce CNS's Requested Attorneys' Fees and Costs by a Fixed Percentage because CNS Failed to Obtain a Permanent Injunction.

After applying the appropriate rate and hourly deductions for the lodestar calculation, CNS's request for fees and expenses should be reduced by no less than 40% because CNS did not succeed in obtaining a permanent injunction, which it requested in the Complaint, and actively sought at trial.  CNS was also unsuccessful in obtaining a preliminary injunction, which it ultimately withdrew, and did not prevail on its motion for summary judgment.  Nevertheless, CNS seeks reimbursement for attorneys' fees and costs related to these unsuccessful motions and claims.

A reduction of the overall fee award by no less than 40% is further justified because CNS is seeking reimbursement for attorneys' fees in the amount of $135,747.50 incurred prior to the lawsuit being filed.  *See Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (capping fees incurred in connection with § 1983 plaintiff's request for attorneys' fees under 42 U.S.C. § 1988).  Given the massive amount of attorneys' fees incurred in connection with the Fee Petition, a percentage reduction of total attorneys' fees and costs is appropriate.

A reduction of no less than 40% is further justified because the amount of resources and attorney time spent on this case is unreasonable given the legal issues and the lack of complexity

and straightforward nature of the case. CNS's enormous request for attorneys' fees and costs under 42 U.S.C. § 1988 in the amount of $2,258,505.83, which includes $135,747.50 in attorneys' fees incurred in connection with preparing the Fee Petition, is unreasonable; accordingly, it must be reduced by a significant percentage. Here, a reduction of no less than 40% is reasonable. *See* Ottinger Aff. ¶¶ 6, 36, 40, and Ex. 3.

A fixed percentage reduction of the overall fee award is further justified because CNS is seeking attorneys' fees for time billed prior to this lawsuit being filed. The Complaint in this matter was filed on July 19, 2018. The Fee Petition, however, seeks reimbursement for time billed beginning on April 1, 2018. Because of the way the billing entries were submitted, Defendants cannot compute the amount of time billed between April 1, 2018 and the date the Complaint was filed. This also weights in favor of a substantial percentage reduction of the overall fee award.

The second and third steps in the process of calculating an attorney fee award is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). The court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*; *see McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013); s*ee Criunp v. United States Dep't of Navy by & through Mabus*, 245 F. Supp. 3d 692, 700 (E.D. Va. 2017) (stating that at the third step in the lodestar calculation, "[w]hat the court must ask is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award'").

CNS did not prevail on its request for a permanent injunction. CNS also briefed and filed a motion for summary judgment, which was unsuccessful. CNS briefed and filed a motion for a preliminary injunction at the time the case was filed, which it eventually withdrew. Taking these factors into consideration, the Court should reduce the attorneys' fees and costs sought by CNS in

19

the Fee Petition by no less than 40% to account for CNS's lack of success in obtaining a permanent injunction, as well as the various unsuccessful motions filed in the case.

## SUMMARY

In summary, the following chart reflects the reasonable amount of attorneys' fees and costs that should be awarded to CNS:

**TABLE 4 – Reasonable Attorneys' Fees and Costs for Purposes of CNS's Fee Petition**

| Name | Title | Requested Hours | Adjusted Hours | Requested Rate | Adjusted Rate | Total |
|---|---|---|---|---|---|---|
| William Hibsher | Partner | 883.3 | 754 | $730 | $450 | $339,300 |
| Heather Goldman | Associate | 1,204 | 1,071 | $590 | $300 | $321,300 |
| Bryan Harrison | Associate | 752.6 | 653.3 | $545 | $275 | $179,657.50 |
| Eileen Weiss | Paralegal | 198.3 | 169 | $290 | $210 | $35,490 |
| Conrad Shumadine | Partner | 262.7 | 262.7 | $450 | $450 | $118,215 |
| Patricia Yoder | Paralegal | 39.8 <br><br> 59.9 | 39.8 <br><br> 59.9 | $155 (2018-19) <br> $160 | $155 (2018-19) <br> $160 | $6,169 <br><br> $9,584 |
| Nilsa Martinez | Paralegal | 21.3 <br><br> 49.2 | 21.3 <br><br> 49.2 | $210 (2019) <br> $215 (2020) | $210 (2019) <br> $215 (2020) | $4,473 <br><br> $10,578 |
| Robert M. Tata | Partner | 51.1 | 51.1 | $845 | $450 | $22,995.00 |
| David Parker | Associate | 19.3 | 19.3 | $565 | $300 | $5,790.00 |
| **TOTAL** | | 3,541.50 | 3,150.60 | | | **$1,053,551.50** |

| | Requested Amount | Reduction | Total |
|---|---|---|---|
| **Expenses under 42 U.S.C. § 1988** | $232,559.83 | ($33,269.82) | **$199,290.01** |

**Total Fees and Expenses (without 40% discount): $1,252,841.51**
**TOTAL FEES AND EXENSES (with 40% discount): $751,704.91**

If one applies to this total a discount of 40% to account for CNS's failure to obtain a permanent injunction, unsuccessful motion for a preliminary injunction, unsuccessful summary judgment motion, and other deficiencies noted above, the result would be **$751,704.91**.

<u>**CONCLUSION**</u>

The Court should reduce CNS's request for attorneys' fees and expenses. The Court should apply the above-referenced deductions and award CNS reasonable attorneys' fees and expenses in the reduced amount of $751,704.91.

Respectfully submitted,

GEORGE E. SCHAEFER, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia

and

JACQUELINE C. SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia


By:  ___/s/_____
William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
Michael G. Matheson (VSB No. 82391)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 698-6254
Fax: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
mmatheson@t-mlaw.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of April, 2020, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to the following:

Conrad M. Shumadine (VSB No. 4325)
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, VA 23510
Tel: (757) 628-5500
Fax: (757) 628-5566
cshumadine@wilsav.com

William Hibsher, Esq. (admitted *pro hac vice*)
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 541-2000
Fax: (212) 541-4630
wjhibsher@bclplaw.com

Heather S. Goldman, Esq. (admitted *pro hac vice*)
Bryan J. Harrison, Esq. (admitted *pro hac vice*)
Bryan Cave Leighton Paisner LLP
1155 F Street, NW, Suite 700
Washington, DC 20004
Tel: (202) 508-6000
Fax: (202) 508-6200
Heather.goldman@bclplaw.com
Bryan.harrison@bclplaw.com

*Counsel for Plaintiff Courthouse News Service*

By: ___/s/_____
William D. Prince IV (VSB No. 77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23219
Tel: (804) 698-6254
Fax: (804) 780-1813
wprince@t-mlaw.com
*Counsel for Defendants*

23